

666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

April 10, 2026

<u>Via ECF</u>

The Honorable Robert W. Lehrburger
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *Center for Constitutional Rights, et al. v. U.S. Dep't of Defense, et al.*
    No. 25-cv-6214 (RWL)

Dear Judge Lehrburger:

  We represent Plaintiffs in the above-referenced Freedom of Information Act case. We write on behalf of all parties in response to the Court's March 31, 2026 order requiring the parties to file by this date "a joint letter of no more than 6 pages setting forth the parties' positions on the issues raised by Plaintiffs in the status letter filed March 10, 2026." ECF No. 40. In that status letter, Plaintiffs requested a conference to address three issues: "(1) DOD's refusal to conduct initial searches for responsive records within Joint Task Force-Guantanamo, Naval Station Guantanamo Bay, Departments of the Army and Navy, and other DOD components specified in Plaintiffs' FOIA request; (2) DOD's failure to produce any responsive records since Plaintiffs submitted their FOIA request more than a year ago; and (3) the continuing delays caused by the lapse in DHS appropriations, particularly concerning ICE." ECF No. 38.

  <u>PLAINTIFFS' POSITIONS</u>

  Plaintiffs submitted their FOIA request to the Defendant agencies on February 6, 2025, requesting records related to the Trump administration's announcement of its intention to expand immigration detention operations at the U.S. Naval Station at Guantanamo Bay, Cuba, and to transfer thousands of individuals from immigration detention facilities in the United States to Guantanamo. Plaintiffs requested nine specific categories of records concerning policies and procedures relating to immigration detention operations at Guantanamo, the legal rights and status of detainees transferred from the United States to Guantanamo, and their conditions of confinement at Guantanamo, including access to legal counsel. ECF No. 1-1. After exhausting their administrative appeals, Plaintiffs filed this case on July 29, 2025, and Defendants answered the complaint on September 19, 2025. ECF Nos. 1, 32. Plaintiffs also provided a list of priority records to Defendants on September 22, 2025. The case was then stayed in October and November 2025 due to a lapse in Government funding. ECF Nos. 33, 34. Apart from the stay, the parties have met and conferred via email and videoconference on numerous occasions regarding Defendants' searches for, and production of, records responsive to Plaintiffs' FOIA

request. However, Defendants have only agreed to prioritize searches for two categories of records: inter- and intra-agency memoranda, and records referencing "posse comitatus." Plaintiffs also agreed to forego several types of material such as publicly available records and drafts of certain records to expedite the production of responsive records. Plaintiffs have not waived any subject-matter areas included in their FOIA request, however, and have informed Defendants that they will consider narrowing their requests after Defendants have completed their initial searches and productions. The parties have reported the progress of this case in joint status reports to the Court. ECF Nos. 35, 37, 38.

As to the three issues raised in the March 10, 2026 status report, Plaintiffs' position is:

1.      Despite the parties' ongoing negotiations, Defendant DOD has refused to conduct *any* searches for responsive records within the following components specified in Plaintiffs' FOIA request: Joint Task Force-Guantanamo (JTF-GTMO), Naval Station Guantanamo Bay (NSGB), the military service branch departments such as the Departments of the Army and Navy, and Task Force Guardian. Plaintiffs' position is that DOD's refusal even to attempt a search of these components violates FOIA, and, consequently, that the Court should order DOD to complete searches of those components within 30 days, and produce no fewer than 500 pages of responsive records (or, alternatively, process no fewer than 2,500 pages of records for production) on a rolling basis each month.

The parties' central disagreement concerns JTF-GTMO. JTF-GTMO is a joint command with primarily responsibility for post-9/11 detainees held at Guantanamo ostensibly pursuant to the Authorization for Use of Military Force, Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 224 (2001), and the laws of war. JTF-GTMO is also a physical location within a remote area of NSGB that includes a detention facility known as Camp 6, which is a classified facility that was previously used to hold law-of-war detainees, but is now used to hold immigration detainees ostensibly pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1101 *et. seq.* Access to JTF-GTMO is restricted even for personnel otherwise present at NSGB.

DOD's refusal to conduct any search of JTF-GTMO for responsive records appears based on a claim that JTF-GTMO is responsible for the law-of-war detainees but not the immigration detainees held at Camp 6 by DHS and ICE, with support from a newly created joint military command, Joint Task Force-Southern Guard (JTF-SG), and thus that JTF-GTMO is unlikely to have responsive records. If that is DOD's position, it should be rejected for at least two reasons.

First, DOD attempts improperly to shift the burden to Plaintiffs to establish that JTF-GTMO has responsive records. Defendants are required by the FOIA statute to search for and produce responsive records promptly in response to requests, and it is Defendants' burden to justify the withholding of otherwise responsive records pursuant to various statutory exemptions. 5 U.S.C. § 552(a)(3)(A) (agency "shall make the records promptly available" to a requester). In fulfilling those obligations, Defendants must conduct adequate or reasonable searches for responsive records. *Id.* § 552(a)(3)(C) (agency "shall make reasonable efforts to search for the records"). Nowhere does FOIA require *Plaintiffs* to show that responsive records exist to trigger the agencies' search obligations. Indeed, that would defeat the purpose of FOIA as a means to inform the public about activities of the federal government. *See DOD v. FLRA*, 510 U.S. 487,

495 (1994) ("core purpose of FOIA" is "contributing significantly to public understanding of the operations or activities of the government") (cleaned up).

Second, although not required by FOIA, Plaintiffs have shown that JTF-GTMO surely has responsive records. Plaintiffs have provided Defendants with government declarations from other Guantanamo-related litigation, news reports, and an Inspector General report from DHS and the State Department, which show JTF-GTMO's involvement in immigration detention operations. The documents produced by DOD so far in response to Plaintiffs' FOIA request also show JTF-GTMO's involvement.[1] These materials specifically show that JTF-GTMO controls access to and use of Camp 6, including its use by DHS and ICE for immigration purposes; its personnel provided security and medical care to immigration detainees at Camp 6 when it was first used for immigration detention; and it still controls counsel access to immigration detainees in Camp 6, notably prohibiting in-person access because of purported national security concerns arising from the classified nature of Camp 6. For example, one of the documents produced by DOD references "JTF-GTMO facilities, which are classified facilities being used [to] hold illegal aliens who are identified by DHS as high-threat" (Bates DOD 0341). Plaintiffs have urged DOD to reconsider its refusal to search JTF-GTMO, but it has declined.

DOD also has provided no explanation at all for its refusal to conduct any searches of NSGB, the military service branches, or Task Force Guardian. NSGB is the Naval Base on which all operations at Guantanamo occur, including immigration detention operations. The military service branch departments are the commands with responsibility for staffing, budgets, and control of each branch's military assets. For example, the Department of the Navy is responsible for NSGB, and any use of that base by other military service branches or other agencies such as DHS and ICE must be coordinated with the Secretary of the Navy. Task Force Guardian is a component of JTF-SG, and the military command with direct responsibility for detention and control of immigration detainees in Camp 6. The declarations and materials noted above that Plaintiffs provided to Defendants show that these components surely have responsive records.

2.      Since the parties filed their joint status report on March 10, 2026, DOD produced documents to Plaintiffs on March 31, 2026, totaling 381 pages, many of which are highly redacted. As noted in the status report, DOD has located several thousand additional records, but has not provided any indication of when it will produce responsive, non-exempt records. ECF No. 38. To bring this case to a conclusion within a reasonable period of time, Plaintiffs again request a production or processing order at the rates specified above, which are practicable and consistent with orders entered in other FOIA cases in this District. *See*, *e.g.*, *Color of Change v. DHS*, 16-cv-8215 (WHP) (S.D.N.Y. Apr. 28, 2017) (ECF No. 28) (ordering DHS and FBI each to produce 500 pages per month); *Det. Watch Network v. ICE*, 14-cv-00583 (LGS) (S.D.N.Y. July 3, 2014) (ECF No. 48) (ordering DHS to process 4,000, or produce 1,500, pages per month).

3.      While Defendants DHS, CBP, and ICE have each made small records productions, they have since ceased processing Plaintiffs' FOIA request due to the lapse in DHS funding. They have done so without seeking a stay of this case, and notwithstanding that the current lapse in appropriations only involves a partial shutdown of one agency. Plaintiffs note that while these

---

[1] Plaintiffs will provide these materials to the Court upon request.

agencies are purportedly unable to respond to Plaintiffs' FOIA request, ICE still appears to be processing FOIA materials and posting them on its website.[2] ICE also recently deployed officers to airports across the country to assist with transportation security screenings which are not part of its mission. *See* Karoun Demirjian, *T.S.A. Union Leaders Blast Trump's Deployment of ICE Agents in Airports*, N.Y. Times, Mar. 24, 2026. It thus appears ICE is able to reallocate resources to its own priorities while ignoring legal requirements and abandoning its FOIA obligations in this case. Again, a judicial order is required to ensure that this case does not drag on indefinitely. *See*, *e.g.*, *RFK Human Rts. v. DHS*, 25-cv-06541 (JMF) (S.D.N.Y. Apr. 7, 2026) (ECF No. 36) (rejecting Anti-Deficiency Act arguments and enforcing FOIA production order despite partial lapse in DHS funding).

DEFENDANTS' POSITIONS

Defendants provide the following responses to each of Plaintiffs' numbered topics:

1.    As noted in past joint status reports, DOD has tasked seven different components with searching for records in response to Plaintiffs' FOIA request: the Office of General Counsel ("OGC"), the Office of the Undersecretary of War for Policy (the "Policy office"), the Joint Staff, Joint Task Force Southern Guard ("JTF-SG"), SOUTHCOM, TRANSCOM, and NORTHCOM, each of which has completed its search. *See* ECF Nos. 37, 38. Plaintiffs argue that DOD's failure to task at least five additional governmental units—JTF-GTMO, NSGB, the Departments of the Army and Navy (and possibly also other military service branch departments), and Task Force Guardian—"violates FOIA." DOD has considered Plaintiffs' arguments but maintains that these additional components need not perform searches because they are not likely to have responsive records. *See Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 497 (S.D.N.Y. 2010).

As DOD has explained to Plaintiffs, JTF-GTMO is not involved in operations concerning illegal aliens (who are held in Camp 6) but focuses exclusively on law-of-war detainees (who are held in Camp 5). Operations related to illegal alien detainees are led by DHS with support from JTF-SG, which has performed a search in response to the FOIA request and is in the process of reviewing potentially responsive records. JTF-SG and JTF-GTMO are two separate tenant units on NSGB that are next to each other geographically but have separate missions. Given JTF-GTMO's lack of involvement in the subject of Plaintiffs' FOIA request, a search of its records is not reasonably necessary.

NSGB is not a component of DOD but instead refers to the military base installation itself. As noted above, JTF-SG (illegal alien operations) and JTF-GTMO (law of war detainees) are just two of the numerous units physically stationed on the naval base. The naval base provides support services such as maritime security, base security, and hospital services, among other services needed to maintain the installation. NSGB is not involved with illegal alien operations and thus would not be expected to have any responsive records.

Task Force ("TF") Guardian seems to be a name that was used at the beginning of the

---

[2] *See* ICE FOIA Library (showing multiple records releases posted in the month of March 2026), available at https://www.ice.gov/foia/library.

illegal aliens operations before JTF-SG was formally established. It was not an official Task Force designated by SOUTHCOM and it involved the same personnel from ARSOUTH that stood up JTF-SG. There is no "TF Guardian" that is a separate entity with separate FOIA responsibility and DOD has already tasked its successor, JTF-SG, with conducting a search.

Finally, DOD does not believe the Departments of the Army and Navy need to be searched in response to Plaintiffs' FOIA request because of the way Combatant Commands ("CCMDs"), like SOUTHCOM, are bureaucratically organized. Army and Navy personnel are separately assigned to CCMDs, such that the CCMD is the custodian of records, not Army or Navy itself. As noted above, DOD has tasked the relevant CCMDs with searching for responsive records.

2.    Plaintiffs ask the Court to order DOD to produce 500 pages per month or process at least 2,500 pages per month because "DOD has located several thousand additional records, but has not provided any indication of when it will produce responsive, non-exempt records." But DOD has provided Plaintiffs with numerous updates about the status of its various components' searches and has explained that its "overall processing is complicated by the need to decrypt many emails, the declassification review required for the classified documents, and the need for extensive inter- and intra-agency consultations." Dkt. No. 38. The amount of time this process has taken so far is not unreasonable given the complexity and breadth of the request, the issues with decryption and classification, and the need to involve other agencies (and the two government shutdowns that have occurred since this case was filed). Further, Plaintiffs' requested processing rate—2,500 pages per month—is neither reasonable nor consistent with rates typically ordered in cases of this type in this district.[3]

Furthermore, as Plaintiffs are raising a request for processing rate order (and proposing a specific rate) for the first time in this letter, to the extent the Court intends to issue such an order, DOD respectfully requests additional time to prepare the agency declarations that will be necessary to support its position that the requested rate is not practicable. *See* 5 U.S.C. § 552(a)(6)(E)(iii). Whether or not a proposed processing rate is "practicable" depends upon numerous factors, including "evidence of the agency's resource constraints, obligations to other FOIA requests, [and] whether the request implicates sensitive or confidential materials." *Documented NY v. U.S. Dep't of State*, No. 20-CV-1946 (AJN), 2021 WL 4226239, at *2 (S.D.N.Y. Sept. 16, 2021). DOD must be given an opportunity to provide detailed information on those factors for the Court's consideration. *See Haitian Bridge Alliance v. DHS*, 22-cv-8344 (ER), 2024 WL 476304, at *10 (S.D.N.Y. Feb. 7, 2024) (citing DHS declarations and rejecting rates requested by FOIA plaintiffs).

3.    Finally, as Plaintiffs note, DHS, CBP, and ICE have stopped processing Plaintiffs' FOIA request due to the lapse in DHS funding. *See* Antideficiency Act, 31 U.S.C. §§ 1341-42, 1349-51, 1511-19 (prohibiting federal employees from obligating or spending money before it is

---

[3] While Plaintiffs cite to *Color of Change v. DHS*, 16-cv-8215 (WHP) (S.D.N.Y. Apr. 28, 2017) (ECF No. 28) as "ordering DHS and FBI each to produce 500 pages per month," the order in that case was more limited. Judge Pauley adopted a "schedule on consent" under which FBI and a component of DHS would *process* 500 pages for the first month and "either process or produce" 500 pages per month thereafter as "determined by consent of the parties." *Id.*

officially appropriated by Congress). FOIA processing generally does not fall within the exceptions to the Antideficiency Act. *See* 31 U.S.C. § 1342 (permitting certain activities necessary for "the safety of human life or the protection of property" during a lapse in appropriations). Plaintiffs appear to suggest that it was inappropriate for DHS HQ, CBP, and ICE to stop processing documents without seeking a stay of this case, but no stay is necessary as there are other defendant agencies unaffected by the funding lapse who have continued to review records and make releases. In addition, no stay is necessary because there is no processing schedule in place for the DHS components and because the Government continues to comply with its obligation to file status reports every other month (including on behalf of the DHS components).

We thank the Court for its consideration of this submission.

Respectfully submitted,

/s/ J. Wells Dixon
Baher Azmy
J. Wells Dixon
Angelo Guisado
Ayla Kadah
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Fl.
New York, N.Y. 10012
Tel: (212) 614-6423
Email: wdixon@ccrjustice.org

cc:     All parties (via ECF)

6